UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Dawn M. Calautti, | |
| Plaintiff | COMPLAINT |
| | Jury Trial Requested |
| v. | |
| Neuro-Rehab Associates, Inc., | |
| Defendant | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW COMES the plaintiff Dawn M. Calautti, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.   Parties**

1. The plaintiff Dawn M. Calautti resides at 7 Hilbert Terrace, Methuen, Massachusetts.

2. The defendant Neuro-Rehab Associates, Inc. is a New Hampshire corporation with a principal place of business located at 70 Butler Street, Salem, New Hampshire.

**II.   Jurisdiction and Venue**

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. The Court may exercise supplemental jurisdiction over the plaintiff's State law claims.

4. Venue is proper because the acts and omissions giving rise to this action occurred within this judicial district.

**III.   Facts**

5. Ms. Calautti began employment with the defendant as a Physical Therapy Assistant in the fall of 1991.

1

6.     Ms. Calautti has consistently performed her job well through the decades. On the occasion of the 25th anniversary of her employment with the defendant, the defendant recognized Ms. Calautti for her leadership in developing the defendant's team of outpatient therapists trained in neurological rehabilitation. "She has great passion for her work with the neuro population and our outpatient Neuro Team is grateful to her for her long term dedication to meeting their needs and providing the best care possible!" the defendant enthused. The defendant noted that Ms. Calautti's colleagues, past and present, praised her as "COMPASSIONATE!!!!!," "an amazing patient advocate," "an excellent teacher," "[a] great motivator," and "extremely dedicated to her patients." Exhibit A.

7.     In or around September of 2016, Ms. Calautti suffered a serious injury when she struck her head hard into the corner of a cabinet while exercising, then struck her head again on a marble countertop as she fell. Ms. Calautti lost consciousness for 25-30 minutes. In the aftermath of Ms. Calautti's injury, Ms. Calautti was diagnosed with a Traumatic Brain Injury with Loss of Consciousness. She endured severe limitations in everyday functioning, becoming severely limited in activities such as seeing, hearing, speaking, remembering, and comprehending.

8.     Ms. Calautti's treating medical providers restricted her from work completely due to her impairments until January 10, 2017. Although Ms. Calautti was released to work at this time, she remained substantially limited in major life activities such as thinking, concentrating and cognitive function.

9.     Ms. Calautti struggled at work following her January 10, 2017, return. Although the defendant accommodated Ms. Calautti's need to increase her hours as tolerated, the defendant declined as a practical matter to grant certain other accommodations that Ms.

Calautti's treating providers had requested—notwithstanding that the defendant had represented to Ms. Calautti that granting such accommodations would pose no problem. Ms. Calautti needed dedicated time during the workday to complete the documentation associated with her physical therapy appointments. The defendant failed and refused to allow Ms. Calautti this dedicated time during the workday, instructing her to complete her documentation during treatment time, during her lunch break, or at home. Ms. Calautti also needed "cognitive breaks" during the workday. The defendant failed to provide her such breaks. Ms. Calautti found herself suffering headaches, nausea and cognitive fatigue at the end of the workday.

10.  On or about December 3, 2018, Ms. Calautti conferred with her treating doctor, Dr. Sizer, regarding the challenges she faced at work. She complained to her doctor that work-related stress was causing her persistent nausea and that she continued to have difficulty at work with scheduling, rest breaks and documentation time. Dr. Sizer completed an Americans With Disabilities Act (ADA) Certification Form for Ms. Calautti, identifying the accommodations that the doctor recommended the defendant provide Ms. Calautti in order to enable her to perform the essential functions of her job. Exhibit B. The accommodations recommended by Dr. Sizer included: a.) increased time to complete documentation; b.) rest breaks; and c.) schedule consistency. Id.

11.  Ms. Calautti requested a meeting with her manager, the defendant's Human Resources personnel and Regional Manager Michelle Kayo regarding the accommodations Dr. Sizer had identified. This meeting occurred in or around January of 2019.

12.  The meeting resulted in Ms. Calautti receiving the accommodations that she needed. The defendant allowed Ms. Calautti dedicated time during the workday to complete her documentation and also allowed her rest breaks.

13. The accommodations resulted in a significant improvement in Ms. Calautti's functioning. At a March 18, 2019, treatment visit, Dr. Sizer noted "marked improvement in [Ms. Calautti's] symptom severity." Exhibit C.

14. On or about May 21, 2019, however, Regional Manager Kayo advised Ms. Calautti that the defendant had decided to make "big, big changes" to her schedule, changing her schedule to five (5) days a week. Ms. Calautti protested the drastic changes to her schedule and the removal of her accommodations in a meeting with Regional Manager Kayo that day. Regional Manager Kayo replied with words to the effect, "I need you to work five (5) days a week."

15. Ms. Calautti next visited Shirley Lussier in the Human Resources department, asking Ms. Lussier if she were aware of the defendant disrupting her schedule as well as the accommodations in place for her disabling impairments. Ms. Lussier tersely responded that she was aware and that the defendant had made the changes "for the development of the Neuro team."

16. Ms. Calautti sent Regional Manager Kayo a proposal for an alternate schedule via interoffice mail on or about May 28, 2019. Exhibit D. Ms. Calautti hoped that the alternate schedule she proposed would meet her goals and the defendant's goals, "keep(ing) schedules consistent among disciplines" on the one hand, while retaining her 3-day schedule containing periods for dedicated documentation time and cognitive rest. Id.

17. Regional Manager Kayo rejected Ms. Calautti's proposal through a May 31, 2019, e-mail. Exhibit E. Regional Manager Kayo advised Ms. Calautti in the e-mail that Ms. Calautti would have to accept a reduction in her hours of 21 hours per pay period (and a corresponding reduction in pay) if Ms. Calautti insisted on keeping a 3-day schedule. Id.

18. Ms. Calautti requested a meeting to discuss the defendant's abrupt changes to her schedule and the defendant's removal of her accommodations. The meeting occurred on or about June 11, 2019, and was attended by Ms. Calautti, Ms. Lussier, Regional Manager Kayo, and Director of Rehabilitation Services Joel Rudin.

19. Ms. Calautti attended a treatment visit with Dr. Sizer on June 10, 2019—the day before her scheduled meeting with the defendant regarding her accommodations. Dr. Sizer noted that Ms. Calautti had been stable before the defendant's actions disrupting her schedule and removing her accommodations. "Patient has had a significant and profound symptom flare," Dr. Sizer wrote. Exhibit F. Dr. Sizer completed another Americans With Disabilities Act Certification Form for Ms. Calautti describing the accommodations Ms. Calautti needed, including "documentation time," "rest breaks," and "schedule consistency." Exhibit G.

20. At the June 11 meeting, Ms. Calautti explained to the defendant's management personnel that she would be rendered unable to work if the defendant failed to accommodate her disabling impairments with a consistent schedule, dedicated time for documentation, and cognitive rest.

21. Director of Rehabilitation Services Rudin asked Ms. Calautti to identify the accommodations she needed. Ms. Calautti handed him a copy of Exhibit G. Director of Rehabilitation Services Rudin reviewed the form and assured Ms. Calautti that the defendant could provide her the accommodations described by Dr. Sizer. The meeting attendees agreed to meet again in one (1) week.

22. On or about June 12, 2019, Ms. Lussier summoned Ms. Calautti to a meeting that Regional Manager Kayo also attended but that Director of Rehabilitation Services Rudin did not. Regional Manager Kayo handed Ms. Calautti her "new schedule." Exhibit H. The "new

schedule" failed to provide the accommodations identified by Dr. Sizer that Director of Rehabilitation Services Rudin had pledged to grant Ms. Calautti only the day before. For example, the "new schedule" failed to provide Ms. Calautti the dedicated documentation time allowed her under the schedule she had followed since February, instead calling for her to switch back and forth throughout the day between treating patients and completing documentation.

23. The defendant's failure and refusal to provide Ms. Calautti the accommodations that her doctor had stated were necessary, and that the defendant had promised to provide, caused Ms. Calautti such anxiety that she could not sleep the night of June 12, 2019. When she arrived at work the following morning, she suffered intense symptoms of her post-concussive syndrome, including vision disturbance and bouts of nausea. Ms. Calautti notified the defendant that her symptoms prohibited her from working. She slept awhile in her car. When she awakened, she drove herself home—a trip of which she has no memory.

24. The exacerbation of Ms. Calautti's symptoms caused her to be restricted from work. As Dr. Sizer wrote in a medical record documenting a September 9, 2019, treatment visit, "it is my clinical opinion that [Ms. Calautti's] psychosocial stressors from her workplace's refusal to make reasonable and effective accommodations has caused direct harm and prolonged her symptoms and suffering from her post-concussive syndrome." Exhibit I.

25. Ms. Calautti timely filed a July 15, 2019, Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC). Exhibit J. The Charge was dually filed with the New Hampshire Commission for Human Rights. Id.

26. The EEOC issued a Final Determination on April 1, 2020, finding "that there is reasonable cause to believe that [Ms. Calautti] was denied a reasonable job accommodation and discharged because of [her] disability in violation of the ADA." Said the EEOC: "The evidence

shows that the final schedule proposed by [the defendant] in June 2019 did not reasonably accommodate [Ms. Calautti's] needs as outlined by her physician…nor was it a reasonable alternative accommodation." The EEOC added in its Final Determination:

> There is also no evidence that [the defendant] considered reassignment to a vacant position that [Ms. Calautti] was qualified to perform with or without a reasonable job accommodation. "Reassignment to a vacant position [is] a form of reasonable accommodation…[and this] type of reasonable accommodation must be provided to an employee who, because of disability, can no longer perform the essential functions of his/her current position, with or without reasonable accommodation, unless the employer can show that it would be an undue hardship."

27. The EEOC issued Ms. Calautti a Notice of Right to Sue dated May 21, 2020. Ms. Calautti is filing the instant lawsuit within ninety (90) days of her receipt of said Notice of Right to Sue, as required.

## COUNT I

### (Violation of Americans With Disabilities Amendments Act)

28. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

29. For all relevant times, Ms. Calautti suffered from disabling impairments within the meaning of the ADAAA, including post-concussive syndrome substantially limiting Ms. Calautti in major life activities such as thinking, concentrating and cognitive function.

30. Ms. Calautti was a qualified individual with a disability because she was able to perform the essential functions of her job with the defendant with reasonable accommodation. Reasonable accommodations the defendant could have provided Ms. Calautti included such things as: a.) allowing her dedicated time during the working day to complete her documentation; b.) allowing her rest periods; c.) providing her a consistent schedule; and/or d.)

reassigning her to a vacant position that she was qualified to perform with or without reasonable accommodation.

31. The defendant discriminated against Ms. Calautti on the basis of disability, denying Ms. Calautti the reasonable accommodations for her disabling impairments that would have enabled her to perform the essential functions of her job.

32. As a direct and proximate result of the defendant's disability discrimination, Ms. Calautti has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, lost earning capacity, medical expenses, emotional distress, humiliation, inconvenience, and loss of enjoyment of life, plus attorney's fees, interest and costs.

33. Ms. Calautti is further entitled to punitive damages based on the defendant's malice and/or reckless disregard for her federally protected rights.

## COUNT II

## (Violation of RSA 354-A:7)

34. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

35. For all relevant times, Ms. Calautti suffered from disabling impairments within the meaning of the New Hampshire Law Against Discrimination, including post-concussive syndrome substantially limiting Ms. Calautti in major life activities such as thinking, concentrating and cognitive function.

36. Ms. Calautti was a qualified individual with a disability because she was able to perform the essential functions of her job with the defendant with reasonable accommodation. Reasonable accommodations the defendant could have provided Ms. Calautti included such things as: a.) allowing her dedicated time during the working day to complete her

documentation; b.) allowing her rest periods; c.) providing her a consistent schedule; and/or d.) reassigning her to a vacant position that she was qualified to perform with or without reasonable accommodation.

37. The defendant discriminated against Ms. Calautti on the basis of disability, denying Ms. Calautti the reasonable accommodations for her disabling impairments that would have enabled her to perform the essential functions of her job.

38. As a direct and proximate result of the defendant's disability discrimination, Ms. Calautti has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, lost earning capacity, medical expenses, emotional distress, humiliation, inconvenience, and loss of enjoyment of life, plus attorney's fees, interest and costs.

39. Ms. Calautti is further entitled to enhanced compensatory damages based on the defendant's willful and/or reckless disregard of Ms. Calautti's rights under RSA 354-A.

WHEREFORE, the plaintiff Dawn M. Calautti respectfully prays this Honorable Court:

A. Schedule this matter for trial by jury, and after trial;

B. Find the defendant liable for disability discrimination in violation of the Americans With Disabilities Amendments Act;

C. Award the plaintiff damages for lost wages, lost employment benefits, lost earning capacity, and medical expenses;

D. Award the plaintiff compensatory damages;

E. Award the plaintiff punitive damages;

F. Award the plaintiff enhanced compensatory damages;

G. Award the plaintiff attorney's fees;

H. Award the plaintiff interest and costs; and

I. Grant such other and further relief as is just and equitable.

>Respectfully submitted,
>DAWN M. CALAUTTI
>By her attorneys,
>DOUGLAS, LEONARD & GARVEY, P.C.

Date: August 17, 2020    By:    /s/ Benjamin T. King
                                Benjamin T. King, NH Bar #12888
                                14 South Street, Suite 5
                                Concord, NH 03301
                                (603) 224-1988
                                benjamin@nhlawoffice.com